# United States Court of Appeals for the Federal Circuit

---

**JAMES L. KISOR,**
*Claimant-Appellant*

**v.**

**DAVID J. SHULKIN, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

---

2016-1929

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 14-2811, Judge Alan G. Lance, Sr.

---

Decided: September 7, 2017

---

KENNETH M. CARPENTER, Law Offices of Carpenter Chartered, Topeka, KS, argued for claimant-appellant.

IGOR HELMAN, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent-appellee. Also represented by BENJAMIN C. MIZER, ROBERT E. KIRSCHMAN, JR., MARTIN F. HOCKEY, JR.; Y. KEN LEE, SAMANTHA ANN SYVERSON, United States Department of Veterans Affairs, Washington, DC.

---

Before REYNA, SCHALL, and WALLACH, *Circuit Judges.*

SCHALL, *Circuit Judge.*

James L. Kisor, a veteran, appeals the January 27, 2016 decision of the United States Court of Appeals for Veterans Claims ("Veterans Court") in *Kisor v. McDonald*, No. 14-2811, 2016 WL 337517 (Vet. App. Jan. 27, 2016). In that decision, the Veterans Court affirmed the April 29, 2014 decision of the Board of Veterans' Appeals ("Board") denying Mr. Kisor entitlement to an effective date earlier than June 5, 2006, for the grant of service connection for his post-traumatic stress disorder ("PTSD"). *Kisor*, 2016 WL 337517, at *1. We affirm.

BACKGROUND

I.

The pertinent facts are as follows: Mr. Kisor served on active duty in the Marine Corps from 1962 to 1966. *Id.* In December of 1982, he filed an initial claim for disability compensation benefits for PTSD with the Department of Veterans Affairs ("VA") Regional Office ("RO") in Portland, Oregon. *Id.* Subsequently, in connection with that claim, the RO received a February 1983 letter from David E. Collier, a counselor at the Portland Vet Center. J.A. 17. In his letter, Mr. Collier stated: "[I]nvolvement in group and individual counseling identified . . . concerns that Mr. Kisor had towards depression, suicidal thoughts, and social withdraw[a]l. This symptomatic pattern has been associated with the diagnosis of Post-Traumatic Stress Disorder (DSM III 309.81)." *Id.*

In March of 1983, the RO obtained a psychiatric examination for Mr. Kisor. In his report, the examiner noted that Mr. Kisor had served in Vietnam; that he had

participated in "Operation Harvest Moon"[1]; that he was on a search operation when his company came under attack; that he reported several contacts with snipers and occasional mortar rounds fired into his base of operation; and that he "was involved in one major ambush which resulted in 13 deaths in a large company." J.A. 19–20. The examiner did not diagnose Mr. Kisor as suffering from PTSD, however. Rather, it was the examiner's "distinct impression" that Mr. Kisor suffered from "a personality disorder as opposed to PTSD." J.A. 21. The examiner diagnosed Mr. Kisor with intermittent explosive disorder and atypical personality disorder. *Id.* Such conditions cannot be a basis for service connection. *See* 38 C.F.R. § 4.127.[2] Given the lack of a current diagnosis of PTSD, the RO denied Mr. Kisor's claim in May of 1983. J.A. 23. The RO decision became final after Mr. Kisor initiated, but then failed to perfect, an appeal. *Kisor*, 2016 WL 337517, at *1.

## II.

On June 5, 2006, Mr. Kisor submitted a request to re-open his previously denied claim for service connection for PTSD. J.A. 25. While his request was pending, he presented evidence to the RO. This evidence included a July 20, 2007 report of a psychiatric evaluation diagnosing PTSD. *See* J.A. 100–11. It also included a copy of Mr. Kisor's Department of Defense Form 214, a Combat

---

[1]    Operation Harvest Moon was a military engagement against the Viet Cong during the Vietnam War. *See, e.g.*, J.A. 20, 95, 101.

[2]    Under § 4.127, "[i]ntellectual disability (intellectual developmental disorder) and personality disorders are not diseases or injuries for compensation purposes, and . . . disability resulting from them may not be service-connected."

History, Expeditions, and Awards Record documenting his participation in Operation Harvest Moon, and a copy of the February 1983 letter from the Portland Vet Center. *See* J.A. 16–17, 27–28. In September of 2007, a VA examiner diagnosed Mr. Kisor with PTSD. J.A. 115. The RO subsequently made a Formal Finding of Information Required to Document the Claimed Stressor based on Mr. Kisor's statements, his service medical records (which verified his service in Vietnam with the 2nd Battalion, 7th Marines), and a daily log from his unit, which detailed the combat events Mr. Kisor had described in connection with his claim. J.A. 30.

In due course, the RO issued a rating decision reopening Mr. Kisor's previously denied claim. The decision granted Mr. Kisor service connection for PTSD and assigned a 50 percent disability rating, effective June 5, 2006.[3] *Kisor*, 2016 WL 337517, at \*1. According to the

---

[3]  Pursuant to 38 C.F.R. § 3.156(a), a claim may be reopened on the submission of "new and material" evidence. The regulation defines "new" evidence as "existing evidence not previously submitted to agency decisionmakers." 38 C.F.R. § 3.156(a). It defines "material" evidence as "existing evidence that, by itself or when considered with previous evidence of record, relates to an unestablished fact necessary to substantiate the claim." *Id.* If a previously denied claim (such as Mr. Kisor's PTSD claim) is later reopened and granted based on the submission of new and material evidence, the effective date of benefits is the date that the claimant filed the application to reopen or the date entitlement arose, whichever is later. *See* 38 U.S.C. § 5110(a); 38 C.F.R. § 3.400(q)(2). In this case, under the new and material evidence approach, the effective date for benefits would be June 5, 2006—the date of Mr. Kisor's request to reopen his claim. J.A. 25.

decision, the rating was based upon evidence that included the July 2007 psychiatric evaluation report diagnosing PTSD, the September 2007 VA examination, and the Formal Finding of Information Required to Document the Claimed Stressor. J.A. 32–33. The RO explained that service connection was warranted because the VA examination showed that Mr. Kisor was diagnosed with PTSD due to experiences that occurred in Vietnam and because the record showed that he was "a combat veteran (Combat Action Ribbon recipient)." J.A. 33.

In November of 2007, Mr. Kisor filed a Notice of Disagreement. In it, he challenged both the 50 percent disability rating and the effective date assigned by the RO. *Kisor*, 2016 WL 337517, at *1. Subsequently, in March of 2009, the RO issued a decision increasing Mr. Kisor's schedular rating to 70 percent. In addition, the RO granted a 100 percent rating on an extraschedular basis, effective June 5, 2006.[4] J.A. 41–45. In January of 2010, the RO issued a Statement of the Case denying entitlement to an earlier effective date for the grant of service connection for PTSD. *See* J.A. 53–65.

---

[4] The VA evaluates a veteran's disability level by using diagnostic codes in the rating schedule of title 38 of the Code of Federal Regulations. *See* 38 C.F.R. § 3.321(a); *see generally* 38 C.F.R. §§ 4.40–4.150 (rating schedule). The evaluation reflects a veteran's base, "schedular" rating. *See Thun v. Peake*, 22 Vet. App. 111, 114 (2008). In exceptional cases, where the schedular rating is inadequate, the veteran is eligible for a higher, "extraschedular" disability rating. *See* 38 C.F.R. § 3.321(b)(1); *Thun*, 22 Vet. App. at 114–15.

III.

Mr. Kisor appealed to the Board. Before the Board, he contended that he was entitled to an effective date earlier than June 5, 2006 for the grant of service connection for PTSD. Specifically, he argued that the proper effective date for his claim was the date of his initial claim for disability compensation that was denied in May of 1983. *See* J.A. 47–48. In support, Mr. Kisor alleged clear and unmistakable error (CUE) in the May 1983 rating decision; he also alleged various duty-to-assist failures on the part of the VA. *See* J.A. 47–48, 84–87.

The Board rejected these arguments. It ruled that the duty to assist had not been violated, that Mr. Kisor had failed to establish CUE, and that the RO's May 1983 rating decision became final when Mr. Kisor failed to perfect his appeal of the decision. *See* J.A. 85–88. The Board found no reason to upset the finality of the May 1983 decision because "[t]he remedy available to the Veteran was to appeal," but he did not do so. J.A. 86.

The Board, however, raised "another way to challenge the May 1983 rating decision" that had not been advanced by Mr. Kisor. J.A. 88. That way turned on whether Mr. Kisor was eligible for an earlier effective date for his service connection under the regulation set forth at 38 C.F.R. § 3.156(c). In contrast to 38 C.F.R. § 3.156(a), which only permits claims to be reopened on the submission of "new and material" evidence, § 3.156(c) allows claims to be reconsidered if certain conditions are met. *See* 38 C.F.R. § 3.156(c)(1) (noting that § 3.156(c) applies "notwithstanding paragraph (a)").

Subsection 3.156(c) includes two parts relevant to this appeal. *First*, paragraph (c)(1) defines the circumstances under which the VA must reconsider a veteran's claim for benefits based on newly-associated service department records:

> [A]t any time after VA issues a decision on a claim, if VA receives or associates with the claims file relevant official service department records that existed and had not been associated with the claims file when VA first decided the claim, VA will reconsider the claim . . . .

38 C.F.R. § 3.156(c)(1). *Second*, paragraph (c)(3) establishes the effective date for any benefits granted as a result of reconsideration under paragraph (c)(1):

> An award made based all or in part on the records identified by paragraph (c)(1) of this section is effective on the date entitlement arose or the date the VA received the previously decided claim, whichever is later, . . . .

38 C.F.R. § 3.156(c)(3).

Section 3.156(c) thus provides for an effective date for claims that are reconsidered that is different from the effective date for claims that are reopened. As we pointed out in *Blubaugh v. McDonald*, "[i]n contrast to the general rule, § 3.156(c) requires the VA to reconsider a veteran's claim when relevant service department records are newly associated with the veteran's claims file, whether or not they are 'new and material' under § 3.156(a)." 773 F.3d 1310, 1313 (Fed. Cir. 2014) (citing New and Material Evidence, 70 Fed. Reg. 35,388, 35,388 (June 20, 2005)). "In other words," we observed, "§ 3.156(c) serves to place a veteran in the position he would have been in had the VA considered the relevant service department record before the disposition of his earlier claim." *Id.*

Applying the regulation, the Board considered whether the material Mr. Kisor submitted in connection with his June 2006 request to reopen warranted reconsidera-

tion of his claim.[5]  If it did, then Mr. Kisor would have been eligible for an effective date of December of 1982 for his disability benefits, "the date the VA received the previously decided claim."  38 C.F.R. § 3.156(c)(3).

After reviewing the evidence, the Board denied Mr. Kisor entitlement to an effective date earlier than June 5, 2006.  J.A. 91.  The Board found that the VA did receive service department records documenting Mr. Kisor's participation in Operation Harvest Moon after the May 1983 rating decision.  J.A. 89–90.  The Board concluded, though, that the records were not "relevant" for purposes of § 3.156(c)(1).  J.A. 90.  The Board explained that the 1983 rating decision denied service connection because there was no diagnosis of PTSD, and because service connection can be granted only if there is a current disability.[6]  *Id.* (citing *Brammer v. Derwinski*, 3 Vet. App. 223 (1992)).  The Board stated that "relevant evidence, whether service department records or otherwise, received after the rating decision would suggest or better yet establish that the Veteran has PTSD as a current disability."  *Id.*  The Board noted that Mr. Kisor's "service personnel records and the daily log skip this antecedent to address the next service connection re-

---

[5]  The newly-submitted material related to Mr. Kisor's Marine Corps service in Vietnam, including his participation in Operation Harvest Moon.  J.A. 94–97. These records had not been part of Mr. Kisor's claims file in May of 1983 when the RO first denied his claim.

[6]  Service connection for PTSD requires (1) a medical diagnosis of the condition, (2) a medically established link between current symptoms and an in-service stressor, and (3) credible evidence showing that the in-service stressor occurred.  *See* 38 C.F.R. § 3.304(f); *Golz v. Shinseki*, 590 F.3d 1317, 1321–22 (Fed. Cir. 2010).

quirement of a traumatic event during service." *Id.* Finally, the Board concluded with the observation that the records at issue were not "outcome determinative" and "not relevant to the decision in May 1983 because the basis of the denial was that a diagnosis of PTSD was not warranted, not a dispute as to whether or not the Veteran engaged in combat with the enemy during service." J.A. 90–91.

Mr. Kisor appealed the Board's decision to the Veterans Court. There, he argued that the Board had "failed to consider and apply the provisions of 38 C.F.R. § 3.156(c)."[7] *Kisor*, 2016 WL 337517, at *1. The court rejected the argument. The court noted that Mr. Kisor did not argue that the service department records presented after the May 1983 rating decision contained a diagnosis of PTSD, the absence of such a diagnosis having been the basis for the RO's 1983 rating decision. *Id.* at *2. The Veterans Court stated that it was "not persuaded that the Board incorrectly applied § 3.156." *Id.* at *3. Accordingly, it held that Mr. Kisor had "failed to demonstrate error in the Board's findings that an effective date earlier than June 5, 2006, is not warranted for the grant of service

---

[7] Mr. Kisor's appeal to the Veterans Court focused solely on the Board's purported misinterpretation of 38 C.F.R. § 3.156(c)(1). Mr. Kisor did not pursue his CUE or duty-to-assist claims before the Veterans Court, and he has not raised them before us. We therefore consider them waived. *See, e.g.*, *Emenaker v. Peake*, 551 F.3d 1332, 1337 (Fed. Cir. 2008) (considering an argument waived on appeal when it was not timely presented to the Veterans Court); *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1319 (Fed. Cir. 2006) ("[A]rguments not raised in the opening brief are waived.").

connection for PTSD." *Id.* Mr. Kisor timely appealed the Veterans Court's decision.

DISCUSSION

I.

Section 7292 of title 38 of the United States Code grants us jurisdiction over decisions of the Veterans Court. Section 7292 provides that we "'shall decide all relevant questions of law' arising from appeals from decisions of the Veterans Court, but, '[e]xcept to the extent that an appeal . . . presents a constitutional issue, [we] may not review (A) a challenge to a factual determination, or (B) a challenge to a law or regulation as applied to the facts of a particular case.'" *Sneed v. McDonald*, 819 F.3d 1347, 1350–51 (Fed. Cir. 2016) (quoting 38 U.S.C. § 7292(d)(1)–(2)).

As discussed more fully below, on appeal Mr. Kisor argues that the Veterans Court misinterpreted 38 C.F.R. § 3.156(c)(1). An argument that the Veterans Court misinterpreted a regulation falls within our jurisdiction. *See* 38 U.S.C. § 7292(c) (granting this court "exclusive jurisdiction to review and decide any challenge to the validity of any . . . regulation or any interpretation thereof" by the Veterans Court); *Spicer v. Shinseki*, 752 F.3d 1367, 1369 (Fed. Cir. 2014); *Githens v. Shinseki*, 676 F.3d 1368, 1371 (Fed. Cir. 2012).

We must set aside an interpretation of a regulation that we find to be:

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(B) contrary to constitutional right, power, privilege, or immunity;

(C) in excess of statutory jurisdiction, authority, or limitations, or in violation of a statutory right; or

(D) without observance of procedure required by law.

38 U.S.C. § 7292(d)(1)(A)–(D); *Sursely v. Peake*, 551 F.3d 1351, 1354 (Fed. Cir. 2009).

## II.

Mr. Kisor contends that, in affirming the decision of the Board, the Veterans Court erred in its interpretation of 38 C.F.R. § 3.156(c)(1).[8] As seen, the regulation pro-

---

[8] Mr. Kisor never argued before the Veterans Court that the Board misinterpreted the term "relevant" in § 3.156(c). *See* J.A. 117–29 (Opening Brief), 155–65 (Reply Brief). Instead, as noted, he argued that the Board "failed to consider and apply the provisions of . . . § 3.156(c)." J.A. 123; *see* J.A. 128 (raising "a question of regulatory interpretation" regarding whether "the use of the phrase 'that existed' [in § 3.156(c)(1)] mean[s] that the relevant official service department records must have existed when the VA first decided the claim"). Mr. Kisor's failure to challenge the Board's interpretation of "relevant" before the Veterans Court could constitute waiver. *See Emenaker*, 551 F.3d at 1337 ("In order to present a legal issue in a veteran's appeal, the appellant ordinarily must raise the issue properly before the Veterans Court . . . ."). The Board did determine, however, that the "service department records received . . . were not relevant." J.A. 79; *see* J.A. 91 (stating that "those documents were not relevant to the [VA's] decision" denying his 1982 claim); *see also* J.A. 147 (VA Response Brief before the Veterans Court explaining that the Board determined that the service records were not relevant). And at oral argument before us, the government abandoned its contention that Mr. Kisor had waived his argument regarding the interpretation of § 3.156(c)(1). Oral

vides that the VA will "reconsider" a claim if it "receives or associates with the claims file *relevant* official service department records that existed and had not been associated with the claims file when VA first decided the claim." 38 C.F.R. § 3.156(c)(1) (emphasis added). Mr. Kisor states that the VA should have reconsidered his claim under the regulation and thus afforded him the favorable effective date treatment that the regulation provides. He argues that the Veterans Court, like the Board, "mistakenly interpreted the term 'relevant' as used in 38 C.F.R. § 3.156(c)(1) as related only to service department records that countered the basis of the prior denial." Appellant's Br. 5. In making this argument, he points to § 3.156(c)(1)(i), which provides in part that service department records "include, but are not limited to: . . . [s]ervice records that are related to a claimed in-service event, injury, or disease, regardless of whether such records mention the veteran by name, as long as the other requirements of [subsection] (c) of this section are met."[9] Appellant's Br. 8–9. Stating that nothing in the regulation "says that the service records must relate to the reason for the last denial," Mr. Kisor urges that a service department record is relevant if it has "any tendency to make the existence *of any fact that is of consequence to the determination of the action* more probable or less probable than it would be without the evidence." Appellant's

---

Argument at 18:47–21:30 (No. 16-1929), http://oralarguments.cafc.uscourts.gov/default.aspx?fl=2016-1929.mp3. Accordingly, we decline to find waiver here. *See Singleton v. Wulff*, 428 U.S. 106, 121 (1976) (stating that waiver is an issue "left primarily to the discretion of the courts of appeals").

[9]    There is no dispute that the personnel records at issue in this case are "service records" within the meaning of 38 C.F.R. § 3.156(c)(1)(i).

Br. 9–10 (quoting *Counts v. Brown*, 6 Vet. App. 473, 476 (1994)). According to Mr. Kisor, the newly-provided service department records demonstrate that he was subjected to the trauma of combat, thereby establishing his exposure to an in-service stressor. *Id.* at 10–13.

The government responds that the Veterans Court and the Board did not misinterpret § 3.156(c)(1). The government takes the position that whether a service department record is relevant depends upon the particular claim and the other evidence of record. Appellee's Br. 14. Thus, the government posits, "if a record is one that the VA had no obligation to consider because it would not have mattered in light of the other evidence, then it cannot trigger reconsideration." *Id.* at 15.

Turning to the case at hand, the government states that the records based upon which Mr. Kisor seeks reconsideration under § 3.156(c)(1) address only the issue of whether there was an in-service stressor, not the requisite medical diagnosis of PTSD. *Id.* at 17. The government states: "The issue of an in-service stressor was never disputed in the 1983 claim; in fact, the examiner noted that Mr. Kisor participated in Operation Harvest Moon and 'was involved in one major ambush which resulted in 13 deaths in a large company.'" *Id.* (citing J.A. 19–20). Accordingly, the government argues that none of the service department records at issue were relevant under the regulation because they related to the existence of an in-service stressor, which was not in dispute, rather than to a diagnosis of PTSD, the absence of which was the basis for the RO's denial of Mr. Kisor's claim in 1983. *Id.* at 17–18.

Finally, the government urges us to reject Mr. Kisor's argument that the Veterans Court and the Board construed the regulation too narrowly because they interpreted relevance as "related only to records that countered the basis of the prior denial." *Id.* at 18 (citing

Appellant's Br. 5). The government contends that neither tribunal required that the evidence relate to the basis for the prior denial in all cases. *Id.* at 18–19. Rather, the evidence simply has to be "relevant." The government concludes that "[i]t just so happened that in the present case, evidence related to the in-service stressor could not be relevant without a medical diagnosis for PTSD at the time of the previous claim." *Id.* at 19.

## III.

For the following reasons, we hold that the Veterans Court did not misinterpret § 3.156(c)(1). We therefore affirm the court's decision affirming the Board's decision denying Mr. Kisor entitlement to an effective date earlier than June 5, 2006, for the grant of service connection for PTSD.

At the heart of this appeal is Mr. Kisor's challenge to the VA's interpretation of the term "relevant" in 38 C.F.R. § 3.156(c)(1).[10] As a general rule, we defer to an agency's interpretation of its own regulation "as long as the regulation is ambiguous and the agency's interpretation is neither plainly erroneous nor inconsistent with the regulation." *Gose v. U.S. Postal Serv.*, 451 F.3d 831, 836 (Fed. Cir. 2006) (citing *Gonzales v. Oregon*, 546 U.S. 243 (2006); *Christensen v. Harris Cty.*, 529 U.S. 576, 588 (2000); *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 413–14 (1945)); *see also Long Island Care at Home, Ltd. v.*

---

[10] The Board interpreted 38 C.F.R. § 3.156(c)(1) when it ruled that Mr. Kisor's service department records were not "relevant" under that subsection. *See* J.A 90–91. Because the Board is part of the VA, *see* 38 U.S.C. § 7101(a); *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 431 (2011), the Board's interpretation of the regulation is deemed to be the agency's interpretation.

*Coke*, 551 U.S. 158, 171 (2007) ("[A]n agency's interpretation of its own regulations is controlling unless plainly erroneous or inconsistent with the regulations being interpreted." (internal quotation marks omitted) (quoting *Auer v. Robbins*, 519 U.S. 452, 461 (1997))).

We hold that § 3.156(c)(1) is ambiguous as to the meaning of the term "relevant." In our view, the regulation is vague as to the scope of the word, and canons of construction do not reveal its meaning. *See Gose*, 451 F.3d at 839 (ruling that a regulatory phrase is ambiguous when "the regulation is vague as to the scope of the phrase"); *Cathedral Candle Co. v. Int'l Trade Comm'n*, 400 F.3d 1352, 1362 (Fed. Cir. 2005) (holding a statute ambiguous when "traditional tools of statutory construction" did not resolve the construction dispute). Significantly, § 3.156(c)(1) does not specify whether "relevant" records are those casting doubt on the agency's prior rating decision, those relating to the veteran's claim more broadly, or some other standard. This uncertainty in application suggests that the regulation is ambiguous. *See, e.g.*, *Abbott Labs. v. United States*, 573 F.3d 1327, 1331 (Fed. Cir. 2009) (holding the regulatory term "affect" was ambiguous when the regulation did not specify the types of effects falling within its scope).

The varying, alternative definitions of the word "relevant" offered by the parties further underscore § 3.156(c)(1)'s ambiguity. *See Nat'l R.R. Passenger Corp. v. Bos. & Me. Corp.*, 503 U.S. 407, 418 (1992) ("The existence of alternative dictionary definitions . . . , each making some sense under the statute, itself indicates that the statute is open to interpretation."); *Hymas v. United States*, 810 F.3d 1312, 1320–21 (Fed. Cir. 2016). In his briefs, Mr. Kisor defines "relevant" in a way mirroring the federal rules of evidence. *Compare* Appellant's Br. 9–10 (defining "relevant" as "any tendency to make the existence of any fact that is of consequence to the determination of the action more [or less] probable" (emphasis

omitted)), *with* Fed. R. Evid. 401(a)–(b) (defining "relevant" as "any tendency to make a fact more or less probable" when the "fact is of consequence in determining the action"). Mr. Kisor thus posits that his personnel records are "relevant" because they speak to the presence of an in-service stressor, one of the requirements of compensation for an alleged service-connected injury. *See* 38 C.F.R. § 3.304(f).

The government, in contrast, collects various competing definitions from case law, legal dictionaries, and legal treatises. *See* Appellee's Br. 14–15 (defining "relevant" as, *inter alia*, "bearing upon or properly applying to the matter at hand," and "[l]ogically connected and tending to prove or disprove a matter *in issue*" (emphasis added) (citing *Forshey v. Principi*, 284 F.3d 1335, 1351 (Fed. Cir. 2002) (en banc); *Relevant*, BLACK'S LAW DICTIONARY (10th ed. 2014))). These definitions support the government's argument that, in this case, Mr. Kisor's personnel records were not "relevant" because they addressed the matter of an in-service stressor, which was not "in issue," rather than the issue of whether he suffered from PTSD, which was "in issue." Both parties insist that the plain regulatory language supports their case, and neither party's position strikes us as unreasonable. We thus conclude that the term "relevant" in § 3.156(c)(1) is ambiguous. *See Viraj Grp. v. United States*, 476 F.3d 1349, 1355–56 (Fed. Cir. 2007) (ruling that a "regulation is ambiguous on its face" when competing definitions for a disputed term "seem reasonable"); *Info. Tech. & Applications Corp. v. United States*, 316 F.3d 1312, 1320–21 (Fed. Cir. 2003).

Because § 3.156(c)(1) is ambiguous, the only remaining question is whether the Board's interpretation of the regulation is "plainly erroneous or inconsistent" with the VA's regulatory framework. *Long Island*, 551 U.S. at 171. As seen, the Board reasoned that Mr. Kisor's supplemental personnel records were not relevant because they contained information that (1) was already known,

acknowledged, and undisputed in the RO's 1983 decision, and (2) did not purport to affect the outcome of that decision. J.A. 90–91. The Board's ruling was thus based upon the proposition that, as used in § 3.156(c)(1), "relevant" means noncumulative and pertinent to the matter at issue in the case. The Board's interpretation does not strike us as either plainly erroneous or inconsistent with the VA's regulatory framework.

In this case, the records Mr. Kisor submitted to the RO in 2006 detailing his participation in Operation Harvest Moon were superfluous to the information already existing in his file. Indeed, in 1983 the VA examiner expressly recounted how Mr. Kisor experienced "one major ambush which resulted in 13 deaths in a large company," and that "[t]his occurred *during Operation Harvest Moon*." J.A. 19–20 (emphasis added). In addition, Mr. Kisor's personnel records submitted in 2006 are not probative here because they do not purport to remedy the defects of his 1982 PTSD claim. The RO denied Mr. Kisor's PTSD claim because the requisite diagnosis of PTSD was lacking. J.A. 21–23; *see* 38 C.F.R. § 3.304(f) (requiring a diagnosis of PTSD to establish service connection); *Young v. McDonald*, 766 F.3d 1348, 1354 (Fed. Cir. 2014) ("[T]he VA has long required a medical diagnosis of PTSD to establish service connection."). Mr. Kisor does not urge that the 2006 records provide that diagnosis. *See* Appellant's Br. 5–6. Instead, the records show that Mr. Kisor was exposed to an in-service stressor—a wholly separate element for establishing service connection that, critically, was never at issue in the case. J.A. 19–20. Because Mr. Kisor's 2006 records did not remedy the defects of his 1982 claim and contained facts that were never in question, we see no plain error in the Board's conclusion that the records were not "relevant" for purposes of § 3.156(c)(1). *See Blubaugh*, 773 F.3d at 1314 (reasoning that § 3.156(c) did not apply when service records "did not remedy [the] defects" of a prior rating

decision and contained facts that "were never in question").

Finally, as noted, Mr. Kisor argues that the Board and Veterans Court construed § 3.156(c)(1) too narrowly, by interpreting "relevant" records to be "records that countered the basis of the prior denial [of benefits]." Appellant's Br. 5. We do not agree with this reading of the Board's or the Veterans Court's decision. Nothing in either tribunal's interpretation of § 3.156(c)(1) strikes us as requiring, across the board, that relevant records *must* relate to the basis of a prior denial. Rather, we understand the Board and Veterans Court as finding only that, on the facts and record of this case, Mr. Kisor's later-submitted materials were not relevant to determination of *his* claim. *See Kisor*, 2016 WL 337517, at *2–3.

## CONCLUSION

For the foregoing reasons, we see no error in the Board's interpretation of § 3.156(c)(1) or in the Veterans Court's affirmance of the Board's interpretation. *See Kisor*, 2016 WL 337517, at *2. The decision of the Veterans Court affirming the Board's decision denying Mr. Kisor entitlement to an effective date earlier than June 5, 2006 for service connection for PTSD is therefore affirmed.

## **AFFIRMED**

### COSTS

No costs.