# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 18-4371

STANLEY L. DAVIS, APPELLANT,

V.

DENIS MCDONOUGH,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued June 25, 2020                                  Decided May 18, 2021)

*Kenneth H. Dojaquez*, of Columbia, South Carolina, for the appellant.

*Jonathan Z. Morris*, with whom *James M. Byrne*, General Counsel; *Mary Ann Flynn*, Chief Counsel; *Edward V. Cassidy, Jr.*, Deputy Chief Counsel; and *Shereen M. Marcus*, were on the brief, all of Washington, D.C., for the appellee.

Before BARTLEY, *Chief Judge*, and TOTH and FALVEY, *Judges*.

TOTH, *Judge*, filed the opinion of the Court. BARTLEY, *Chief Judge*, filed an opinion concurring in part and dissenting in part.

TOTH, *Judge*: Under 38 C.F.R. § 3.156(b), when new and material evidence is submitted within the appeal period following a VA decision on a claim, the evidence must be considered in connection with that claim.[1] Caselaw says that, if VA fails to undertake that consideration, the claim remains pending until it does. Thus, when this rule is implicated, it can require the assignment of effective dates for benefits ultimately granted that are much earlier than would otherwise obtain.

Veteran Stanley L. Davis invokes § 3.156(b) on appeal of a Board decision that denied him an effective date earlier than February 27, 2009, for the award of disability compensation for lupus. In simplified terms, he argues that he submitted new and material evidence shortly after VA initially denied his lupus claim; VA failed to consider this new evidence together with that claim; the failure resulted in the continued pendency of the claim; and this pendency meant that, when

---

[1] VA made some changes to § 3.156 following passage of the Veterans Appeals Improvement and Modernization Act of 2017, but those changes are not applicable in this case, which was adjudicated under the "legacy appeals" system. *See George v. Wilkie*, 32 Vet.App. 318, 324 n.43 (2020).

VA eventually granted service connection for lupus, the effective date should have corresponded to the date he filed his initial claim. The Board rejected this argument for various reasons, including that the evidence at issue wasn't new and material with respect to a pending lupus claim. Mr. Davis principally challenges that reasoning.

We find it unnecessary to resolve whether the evidence was new and material or the related question of whether the evidence simultaneously transformed the scope of the pending claim into one for lupus. Even if the Board's determinations in this regard were erroneous for all the reasons offered by the veteran, such error is harmless. The Board concluded that VA responded in May 2004 to the evidence submitted, and it is obvious from the record before us that this response constituted the consideration required by § 3.156(b). In other words, any mistake the Board later made in finding the evidence not new or material couldn't have prejudiced the veteran because he received precisely what he contends he was due: consideration of the evidence. Given this, the Court affirms the portion of the Board decision denying an earlier effective date under § 3.156(b).

To the extent the Board denied an earlier effective date under § 3.156(c), we vacate that portion of the decision and remand for the Board to reconsider the question in light of intervening relevant legal authority.

## I. BACKGROUND

Because the procedural history of the veteran's claim is critical to understanding the issues in this case, a detailed description is necessary. Mr. Davis had active duty for training in the Army from November 1984 to April 1985 and active duty in the Navy from August 1985 to June 1988. He first sought disability compensation in 1999 for psychiatric problems. VA sought and received his Navy medical records. The regional office (RO) denied the claim a few months thereafter, finding that the condition with which he was diagnosed in service records—adjustment disorder— didn't qualify as a disability for VA purposes. Following a request for additional review, VA again denied the claim in June 2000. He did not appeal these denials to the Board.

More than a year later, in December 2001, Mr. Davis sought VA compensation for several issues, including "nerves (breakdown)" and PTSD, bilateral knee and foot "pain/problems," and hand arthritis. R. at 1928. The RO denied all claims in a June 2002 decision (mailed the following month). It found no evidence of current hand, knee, or foot disabilities or of a current psychiatric disorder. The veteran filed a Notice of Disagreement in January 2003 with respect to his "claim

2

for service connection for a psychiatric condition." R. at 1905. The Agency acknowledged it the following month.

Then, in May 2003, Mr. Davis submitted a statement to VA. In it, he requested compensation for lupus, asserting that service records would show that he was suffering from it.[2] "I also believe," he continued, "that my depression and all other mental conditions are as a result of my lupus." R. at 1900. He also asked that a copy of his service medical records be sent for review to a Dr. Prabhu, his nephrologist. The veteran submitted another statement about six months later. The first page—dated October 29—contended that his request for compensation based on hand, knee, and foot pain was actually a claim for lupus because these problems were "associated with" it. R. at 1866. The second page—dated November 4—asked that VA obtain records from his private physicians to support his claim "for service connection for a psychiatric condition to include an adjustment disorder with emotional features and Lupus and its residuals." R. at 1867. Although VA received these letters together on November 25, 2003,[3] the Court follows the Board in referring to the submission as the October 2003 statement. In between receiving the May and October 2003 statements, VA issued a Statement of the Case, which continued to deny service connection for a psychiatric condition.

On May 13, 2004, the RO issued a rating decision regarding service-connection claims for lupus and psychiatric problems. The decision began by noting, "We received a request to reopen a previous claim on May 8, 2003 and November 25, 2003," R. at 1833, and then proceeded to adjudicate the claims on the merits. The RO denied the lupus claim because the condition did not arise during service and was not caused by it. In reaching this conclusion, VA referenced: correspondence from Dr. Prabhu confirming that the veteran was treated in 2003 for a kidney disability, glomerulonephrosis, secondary to lupus; correspondence from a Dr. Law advising that he had no treatment records pertaining to the veteran; and a lack of response from a Dr. Lloyd. R. at 1834. As for psychiatric problems (variously described as adjustment disorder, PTSD, nervous breakdown, and depression), the RO found no evidence that they were incurred in or aggravated

---

[2] Lupus is a disease in which the body's immune system attacks itself; the resulting inflammation can affect the joints, skin, kidneys, blood cells, brain, heart, and lungs. Signs and symptoms may include fatigue, joint pain and stiffness, chest pain, headaches, confusion, and memory loss. *See Lupus*, MAYO CLINIC, https://www.mayoclinic.org/diseases-conditions/lupus/symptoms-causes/syc-20365789

[3] Although Mr. Davis's brief sometimes refers separately to an October 2003 document and a November 2003 document, he acknowledges that they were both received together on November 25, 2003. Appellant's Br. at 2.

by service. It further denied compensation for these problems as secondary to lupus, since that condition wasn't service connected. Mr. Davis did not disagree with this decision. Nor did he act after a November 2006 RO decision continued the denial of the psychiatric claim because evidence submitted was not new and material.

In February 2009, the veteran filed the request to reopen his lupus claim that led to this appeal. After reopening and developing the claim, the RO in 2010 granted service connection for systemic lupus erythematosus with glomerulonephrosis, alopecia, and depression with a 100% rating. The effective date assigned was February 27, 2009. This time, Mr. Davis filed a Notice of Disagreement. He argued that his effective date should be based on his original December 2001 claim since VA ultimately granted service connection for lupus because of service medical records that were not part of the claims file during the original adjudication. R. at 884 (citing 38 C.F.R. § 3.156(c)). When VA continued the effective date assigned, he sought Board review.

Once there, Mr. Davis renewed his § 3.156(c) argument. He also introduced an argument based on § 3.156(b). He first contended that his 2003 statements clarified the scope of the December 2001 claim.[4] The May 2003 statement "transformed" his prior submission "into a claim for depression and lupus," and the October 2003 statement "further morphed" the claim into one for "lupus, depression, and other orthopedic conditions." R. at 76 (emphasis omitted). He further argued that, in addition to changing the scope of the December 2001 claim, the 2003 statements constituted new and material evidence that the RO was bound to address under § 3.156(b) and, because it failed to do so, the December 2001 claim ostensibly for lupus remained pending until VA granted it in 2010.

While the appeal was pending before the Board, Mr. Davis submitted medical records from his period of Army service (November 1984 to April 1985). He asserted that these new records were relevant to the lupus claim and, therefore, triggered the duty to "reconsider" the claim under § 3.156(c).

The Board issued the decision on appeal in June 2018 and denied an earlier effective date for lupus compensation. It recounted in some detail Mr. Davis's theory of entitlement to an earlier effective date under § 3.156(b) but "disagree[d] with the purported evolution of the claims." R. at

---

[4] Although VA at the time interpreted the December 2001 application as seeking compensation for several distinct disabilities, Mr. Davis's argument is that the submission is properly construed as a single "claim"—lupus with associated psychiatric and joint problems. Thus, we will simply refer to a singular December 2001 claim.

12. Per the Board, the May 2003 statement did not "transform" the December 2001 claim; instead it simply advanced a new theory of service connection for a psychiatric disorder and initiated a new service-connection claim for lupus. R. at 12-13; *see also* R. at 14 (rejecting the "transformational" argument under *Clemons v. Shinseki*, 23 Vet.App. 1 (2009)). Because the May 2003 statement only set forth theories, it didn't constitute new and material evidence. This, the Board reasoned, meant that the case was not covered by *Beraud v. McDonald*, 766 F.3d 1402 (Fed. Cir. 2014), which holds that a claim remains pending under § 3.156(b) unless VA addresses new and material evidence submitted during the appeal period. Alternatively, the Board concluded, *Beraud* was distinguishable because, when VA received evidence in the form of authorizations to contact Mr. Davis's private physicians, it acted on it. But outreach to the doctors did not result in any new and material evidence.

Regarding § 3.156(c), which also allows a much earlier effective date when "new and relevant" evidence in the form of service records leads to the award of compensation, the Board thought there was "ample evidence to find that . . . service treatment records were available when the claim was initially denied in May 2004." R. at 8. Because these records were already considered, when VA eventually granted service connection for lupus in 2010, § 3.156(c) wasn't applicable. The Board also determined that Army medical records newly submitted in 2017 did not trigger the provision because they were not relevant.

Thus, the Board concluded that the general effective date provision applied and directed an effective date no earlier than February 27, 2009. *See* 38 C.F.R. § 3.400(b)(2)(i), (r) (2020). This appeal followed.

## II. ANALYSIS

Mr. Davis disputes many of the Board's conclusions. With respect to § 3.156(b), the veteran contends that the Board erred in finding that the 2003 statements didn't alter the scope of the December 2001 claim. Next, he asserts that the question of whether "material evidence" includes "evidence that expands the scope of a claim" is a legal issue that the Court must resolve de novo. Appellant's Br. at 10. Alternatively, even under the "clearly erroneous" standard, Mr. Davis maintains that the Board mistakenly concluded the 2003 statements weren't material. Based on these arguments, he seeks reversal. As to the § 3.156(c) analysis, the veteran contends that the Board applied an incorrect legal standard for assessing relevance, necessitating remand.

5

A. *38 C.F.R. § 3.156(b)*

We first review the language of § 3.156(b) and the caselaw interpreting it before turning to Mr. Davis's arguments and explaining why, even if the Court accepts his allegations of error, he hasn't demonstrated that he was prejudiced by them.

*1.*

Subsection (b) provides:

New and material evidence received prior to the expiration of the appeal period, or prior to the appellate decision if a timely appeal has been filed (including evidence received prior to an appellate decision and referred to the agency of original jurisdiction by the Board of Veterans Appeals without consideration in that decision in accordance with the provisions of § 20.1304(b)(1) of this chapter), will be considered as having been filed in connection with the claim which was pending at the beginning of the appeal period.

38 C.F.R. § 3.156(b) (2020). "New evidence is evidence not previously part of the actual record before agency adjudicators. Material evidence means existing evidence that, by itself or when considered with previous evidence of record, relates to an unestablished fact necessary to substantiate the claim." *Id.* § 3.156(a). Although these definitions appear in subsection (a) of the regulation, they apply to subsection (b) as well. *See Voracek v. Nicholson*, 421 F.3d 1299, 1304-05 (Fed. Cir. 2005).

This provision "is intended to be a veteran-friendly provision that allows for the assignment of an effective date of the date of the original claim when certain requirements are met." *Young v. Shinseki*, 22 Vet.App. 461, 469 (2009) (citing General Evidence Requirements, Effective Dates, Revision of Decisions, and Protection of Existing Ratings, 72 Fed. Reg. 28,778 (May 22, 2007)). And when implicated, it "suspends finality in the decision to which it applies until VA takes the action required." *Mitchell v. McDonald*, 27 Vet.App. 431, 436 (2015). This is made plain by VA's effective-date regulation: When new and material evidence is received within the appeal period or prior to the issuance of an appellate decision, the effective date for any resulting award of benefits "will be as though the former decision had not been rendered." 38 C.F.R. § 3.400(q)(1) (2020).

Although the general duty imposed by § 3.156(b) is easily stated, VA has not always recognized the extent of its obligations under the provision. So, for example, in *Bond v. Shinseki*, 659 F.3d 1362, 1363 (Fed. Cir. 2011), within the appeal period of an RO decision assigning an initial 30% PTSD rating, the veteran submitted a claim seeking "an increase in percentage rating" for that condition, coupled with new medical evidence. VA treated the submission solely as an

increased-rating claim. But the Federal Circuit held that, under § 3.156(b), "VA must evaluate submissions received during the relevant period and determine whether they contain new evidence relevant to a pending claim, whether or not the relevant submission might otherwise support a new claim." *Id.* at 1369. It couldn't be presumed that VA had silently considered the evidence in connection with the pending claim, especially when "the additional materials submitted would seem to compel the opposite conclusion." *Id.* at 1368.

Another important aspect of § 3.156(b): It must be clear that VA considered and applied it when warranted. In *Beraud*, the veteran submitted a letter shortly after VA initially denied service connection for a headache disorder informing it of the location of additional service records; VA "never responded to the letter." 766 F.3d at 1403. When the Agency several years later reopened the claim and granted service connection, it had still "never determined whether the medical records Beraud referred to . . . constituted new and material evidence." *Id.* at 1407. This silence was irreconcilable with § 3.156(b). That provision requires VA to respond "directly" to a submission received during the appeal period and, "until it does so, the claim at issue remains open." *Id.* at 1407. Thus, the regulation overrides the "general presumption" that VA considers all relevant evidence submitted to it. *Id.* at 1406.

*2.*

Here, Mr. Davis challenges several aspects of the Board's analysis regarding his § 3.156(b) theory. He first disagrees with the conclusion that the 2003 statements did not alter the scope of the December 2001 claim. Specifically, he disputes the Board's observation that "the October 2003 statement cannot retrospectively alter the issues raised in December 2001." R. at 14. Next, he disagrees with the conclusion that the 2003 statements did not—at the same time they were altering the scope of the December 2001 claim—constitute new and material evidence with respect to it. And while on the subject, he urges the Court to review the Board's "new and material" determination de novo rather than under the "clearly erroneous" standard. But even if the Board's analysis is erroneous in the ways he asserts, the veteran doesn't explain how that alters what the RO actually did in its May 2004 decision or why that action did not fulfill VA's duty under § 3.156(b).

The Court accepts for the sake of argument that Mr. Davis is right and the Board is wrong: that the 2003 statements permissibly clarified that what the veteran submitted in December 2001 was properly construed as a compensation claim for lupus with associated joint and psychiatric

problems and not multiple compensation claims based on unrelated disabilities. We further assume, again without deciding, that the Board clearly erred in finding the 2003 statements not new and material.[5]

But Board error does not automatically require setting aside a Board decision. When adjudicating appeals, this Court must "take due account of the rule of prejudicial error." 38 U.S.C. § 7261(b)(2). This means, where it is not obvious that an error was harmful, the appellant bears the burden of showing that it was. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009). Prejudice, which disrupts the essential fairness of the adjudication, "can be shown by demonstrating that the error (1) prevented the claimant from effectively participating in the adjudicative process, or (2) affected or could have affected the outcome of the determination." *Simmons v. Wilkie*, 30 Vet.App. 267, 279 (2018), *aff'd*, 964 F.3d 1381 (Fed. Cir. 2020). In assessing prejudice, the Court's inquiry is "not limit[ed] . . . to the facts as found by the Board" but must be based on a review "of the record of the proceedings before the Secretary and the Board." *Newhouse v. Nicholson*, 497 F.3d 1298, 1301-02 (Fed. Cir. 2007) (noting that prejudicial-error review does "not violate the *Chenery* doctrine").

Based on the assumptions of error mentioned above, Mr. Davis would be correct that § 3.156(b) applied here and that the RO had an obligation, in the regulation's words, to consider his 2003 statements "as having been filed in connection with the claim which was pending at the beginning of the appeal period." That, it appears to us, is exactly what the May 2004 RO decision did.

First, the RO indicated that it was acting on a "previous claim" based on submissions received on May 8, 2003, and November 25, 2003, the dates of the statements Mr. Davis contends constituted new and material evidence. R. at 1833. Next, the RO characterized the issues before it as service connection for lupus and for a psychiatric disorder "as secondary to lupus." R. at 1834. This characterization is clearly based on information taken from the 2003 statements since those documents are the first in the record to mention lupus explicitly. Further, in discussing the lupus

---

[5] Since the Court is assuming Board error even under the more deferential "clearly erroneous" standard, we need not resolve Mr. Davis's contention that this is one of those rare cases that we opined in *Elkins v. West*, 12 Vet.App. 209, 218 (1999) (en banc), may "from time to time" arise and call for de novo review of the Board's "new and material" evidence determination. Whether *Elkins* remains good law on this point is a question for another day. *See, e.g.*, *Prillaman v. Principi*, 346 F.3d 1362, 1367 (Fed. Cir. 2003) ("We find that the [Board] is better suited to making the fact-intensive and time-consuming new and material evidence determinations than the [Veterans Court], and that its findings are entitled to deference.").

claim, the RO discussed the records it received from Drs. Prabhu and Law (and the lack of response from Dr. Lloyd). R. at 1834. These were the records Mr. Davis asked VA to obtain in his October 2003 statement. R. at 1867. Thus, it is apparent that the May 2004 RO decision was "directly responsive" to the 2003 statements, as required by *Beraud*. 766 F.3d at 1407.

Moreover, we think it equally clear from the RO's adjudication that, for all practical purposes, it treated Mr. Davis's 2003 statements as "contain[ing] new evidence relevant to a pending claim." *Bond*, 659 F.3d at 1369. True, the decision used the term "reopen," a concept applicable under § 3.156(a) to a "finally adjudicated" claim rather than a still "pending" claim under § 3.156(b). But the trigger for reopening a final claim is the same as for reconsidering a pending claim: new and material evidence. *See Voracek*, 421 F.3d at 1304-05. It's not clear whether the RO at the time intended its action as an initial adjudication of a lupus claim and a readjudication of a reopened psychiatric claim. What *is* clear from the record is the result of its action: a merits decision on compensation for the disabilities identified in the 2003 statements, based on the theories raised in the 2003 statements (lupus arising in service, depression resulting from lupus), and in light of the information and evidence asserted in the 2003 statements. *Cf. Morse v. McDonough*, 994 F.3d 1371, 1379 (Fed. Cir. 2021) ("As the Veterans Court concluded, the 2008 Board in effect conducted a reconsideration of Mr. Morse's claim, even though it did not cite section 3.156(c) in its ruling or refer to its action as a reconsideration.").

Mr. Davis has not identified any aspects of the 2003 statements that the May 2004 RO decision did not consider and directly respond to. In fact, when we asked at oral argument why the May 2004 RO decision wouldn't satisfy VA's obligations under § 3.156(b), counsel for the veteran conceded that the decision was "technically responsive to the evidence." Oral Argument at 15:18-44. He immediately caveated this with the assertion that, because a Notice of Disagreement was filed, only a Board decision could then "finalize" the claim. From this proposition, he reasoned that the sole acceptable form that the RO's response to new and material evidence could take under the regulation was a Supplemental Statement of the Case. He candidly admitted, however, that neither *Beraud* nor any case of which he was aware imposed this sort of rigid rule. *Id.* at 16:20-55. Like counsel, the Court discerns nothing in § 3.156(b) or the caselaw that would render an admittedly responsive VA consideration of new and material evidence a nullity based simply on the title of the document in which that consideration occurs.

To be clear, a determination that VA fulfilled its duty under § 3.156(b) in the May 2004 RO decision says nothing about the correctness of the May 2004 RO decision. If Mr. Davis had appealed that decision, a higher tribunal might have found error in its assessment of the merits or a deficiency in its duty-to-assist obligations. But § 3.156(b) does not provide a remedy for those sorts of VA mistakes. Its purpose is to prevent VA from ignoring new and material evidence received before a claim's appeal period expires; it accomplishes this by keeping that claim pending until VA directly addresses such evidence. *See Mitchell*, 27 Vet.App. at 439. The May 2004 RO decision directly addressed the 2003 statements. For purposes of this appeal, that is what matters.

Our dissenting colleague contends that, if the RO had considered Mr. Davis's 2003 statements to be part of the pending claim, "it would have been obligated to consider whether his psychiatric symptoms represented the initial onset of lupus and, if so, assess the lupus claim under 38 C.F.R. § 3.303(a), which requires service connection where there is inception of a disability during service." *Post* at 13. Because the RO didn't make those assessments, the dissent reasons, its May 2004 decision wasn't responsive to the veteran's statements. We think this overstates the scope of the inquiry under *Bond* and *Beraud*, which is whether VA directly responds to purportedly new and material evidence submitted during the appeal period in connection with a pending claim. As explained above, the May 2004 RO decision fulfilled those obligations. Whether the RO erred in assessing the importance of the evidence with respect to a specific theory of service connection is a question that goes to the merits of the May 2004 decision, not its responsiveness under § 3.156(b).

So, even if the Board erred in finding that the 2003 statements weren't new and material evidence received with respect to a December 2001 lupus claim, these Board errors would not change the fact that the May 2004 RO decision treated the 2003 statements as if they were. And because the May 2004 RO decision addressed the statements as required by § 3.156(b), the claim pending at the time became final when the veteran did not timely appeal the May 2004 decision. Accordingly, an earlier effective date for lupus cannot be assigned under § 3.156(b). Thus, Mr. Davis has not shown that any Board errors of the sort he alleges prejudiced him. *See Simmons*, 30 Vet.App. at 279.

## B. *38 C.F.R. § 3.156(c)*

Subsection (c) of § 3.156 provides that, "at any time after VA issues a decision on a claim, if VA receives or associates with the claims file relevant official service department records that existed and had not been associated with the claims file when VA first decided the claim, VA will

reconsider the claim." 38 C.F.R. § 3.156(c)(1). If an award of benefits results even "in part" because of such records, the effective date will be "the date entitlement arose or the date VA received the previously decided claim, whichever is later, or such other date as may be authorized by the provisions of this part applicable to the previously decided claim." *Id.* § 3.156(c)(3). The point of these provisions is to put veterans in the positions they would have been had VA obtained and considered relevant service department records before adjudicating their earlier claims. *See Blubaugh v. McDonald*, 773 F.3d 1310, 1313 (Fed. Cir. 2014).

Here, the Board rejected Mr. Davis's § 3.156(c) argument regarding Navy medical records because they were part of the claims file and were considered when the lupus claim was denied in May 2004. The veteran doesn't challenge this conclusion, and in any event, it is supported by the discussion in the May 2004 decision of Navy medical records, R. at 1834, and the 1999 notation that they were requested and received, R. at 2232. Subsection (c) is not implicated when the service records at issue have always been part of the claims file. *Cf. Blubaugh*, 773 F.3d at 1314 ("[A]ccording to the plain language of the regulation, subsection (c)(1) does not apply under such circumstances because the VA has already reconsidered the merits of the veteran's claim in light of the relevant service record.").

Instead, the veteran focuses on the second part of the Board's § 3.156(c) analysis. The Board determined that medical records from his period of Army service, which were first received in 2017, were not "relevant" to the lupus claim. Mr. Davis contends that the Board applied the wrong legal standard of relevance.

The Federal Circuit first addressed the meaning of the word "relevant" in this context almost four years ago in *Kisor v. Shulkin*, 869 F.3d 1360 (Fed. Cir. 2017) (*Kisor I*). The Board's § 3.156(c) analysis cites that decision. But it was subsequently vacated by the Supreme Court. *Kisor v. Wilkie*, 139 S. Ct. 2400 (2019). The Federal Circuit issued another decision last summer. *Kisor v. Wilkie*, 969 F.3d 1333 (Fed. Cir. 2020) (*Kisor III*). Then, on April 30, 2021, that court granted a petition for panel rehearing, denied a petition for full-court review, and issued *Kisor v. McDonough*, __ F.3d __, No. 16-1929, 2021 WL 1720021 (Fed. Cir. Apr. 30, 2021) (*Kisor IV*), which modified *Kisor III*. Neither party has brought the post-*Kisor I* decisions to our attention, much less asked for the opportunity to address them. And the briefing in this case, having been completed long before *Kisor III* and *Kisor IV* were decided, focuses exclusively on *Kisor I*.

In circumstances where there has been a new legal development between the issuance of a Board decision and the submission of a case to the Court, we have the discretion not to address the effect of that development and instead remand for the Board to consider it in the first instance. *See Robinson v. O'Rourke*, 891 F.3d 976, 983 (Fed. Cir. 2018). That course is appropriate here. The Board did not have the benefit of the Federal Circuit's latest decision on the "relevant" standard when it adjudicated the § 3.156(c) issue. Allowing the Board to consider *Kisor IV* in the first instance and apply the most recent law on this subject to the facts may moot any error Mr. Davis alleges the Board made when it relied on *Kisor I*. Accordingly, we vacate the portion of the decision denying an earlier effective date under § 3.156(c) and remand for the Board to readjudicate the matter in light of *Kisor IV*. For the sake of completeness, we urge the Board when readjudicating to consider any germane arguments presented in the parties' briefs in this appeal.

## III. CONCLUSION

The portion of the June 1, 2018, Board decision denying an earlier effective date under § 3.156(c) for the award of disability compensation for lupus is VACATED in part and that matter is REMANDED for readjudication in light of *Kisor IV*. The portion of the decision denying an earlier effective date under § 3.156(b), however, is AFFIRMED.

BARTLEY, *Chief Judge*, concurring in part, dissenting in part: I disagree with my colleagues that VA fulfilled its duty under 38 C.F.R. § 3.156(b) to respond to Mr. Davis's 2003 submissions. Therefore, I respectfully dissent as to that part of the decision.

We are not permitted to ignore the clear mandate of the U.S. Court of Appeals for the Federal Circuit that § 3.156(b) requires VA to determine whether submissions to VA during an appeal period are new and material evidence pertaining to a pending claim. *Bond v. Shinseki*, 659 F.3d 1362, 1367 (Fed. Cir. 2011); *see Beraud v. McDonald*, 766 F.3d 1402, 1407 (Fed. Cir. 2014) (holding that under § 3.156(b) VA must provide a determination that is "directly responsive" to the new submission). Nevertheless, the majority focuses on a lack of purported harm to Mr. Davis because the RO "for all practical purposes" treated his submissions as new and material evidence relating to the pending claim. *Ante* at 9. Unlike the majority, I'm unable to conclude that the RO's failure to complete its express regulatory obligation under § 3.156(b) did no harm.

12

The majority accepts for the sake of argument that Mr. Davis's 2003 submissions were (1) new and material evidence implicating § 3.156(b), and (2) that this new evidence indicated that what the veteran submitted in December 2001 "was properly construed as a compensation claim for lupus with associated joint and psychiatric problems." *Ante* at 7-8. But the majority then concludes that the May 2004 RO decision directly responded to the veteran's new and material evidence. It did not.

The RO in May 2004 adjudicated two claims, one for lupus as directly incurred during service and another for a psychiatric condition secondary to the non-service-connected lupus. R. at 1833-35. As to the former claim, the RO determined that service medical records did not show that Mr. Davis was treated for or diagnosed with lupus during service and that he had not submitted evidence that lupus was incurred during service. R. at 1834. As to the latter claim, the RO simply concluded that because lupus was not service connected, his claim for a psychiatric condition secondary to lupus could not stand. R. at 1834-35.

Contrary to the majority's conclusion, in 2004 the RO did not adjudicate the lupus claim with the understanding that in-service psychiatric symptoms were manifestations of or associated with lupus. This is significant because Mr. Davis's service medical records showed that he experienced and was treated for psychiatric symptoms. If the RO in 2004 had considered the veteran's 2003 evidence as part of the pending claim it would have been obligated to consider whether his psychiatric symptoms represented the initial onset of lupus and, if so, assess the lupus claim under 38 C.F.R. § 3.303(a), which requires service connection where there is inception of a disability during service. The RO in May 2004 did not make these assessments; it failed entirely to make a decision that was responsive to Mr. Davis's 2003 evidence that his claim was for lupus with associated psychiatric symptoms. Although the majority suggests otherwise, my disagreement is not with the merits of the 2004 RO decision, but with the fact that the RO did not address the evidence in the manner that § 3.156(b) requires.

Because I cannot conclude that the RO's failure to make the new-and-material evidence determination required by § 3.156(b) was harmless, I respectfully dissent as to that part of the decision.

13